UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                               :

ELGIN K. TURNER,                   :

                               :

                    Plaintiff,    :

                               :             17-CV-9168 (VSB)

          - against -         :

                               :         **OPINION & ORDER**

                               :

MTA METRO-NORTH RAILROAD, BRIAN :
G. PHILLIPS, KEVIN PFEIFFER, and   :
GEORGE D. MILLET, JR.,        :

                               :

                    Defendants.  :
--------------------------------------------------------X

Appearances:

Seamus Patrick Barrett
Derek Smith Law Group, PLLC
New York, New York
*Counsel for Plaintiff*

Jennifer Anne Mustes
Metro-North Commuter Railroad
New York, New York
*Counsel for Defendants*


VERNON S. BRODERICK, United States District Judge:

      Plaintiff Elgin K. Turner ("Plaintiff" or "Turner") brings this employment discrimination

action against Defendants Metro-North Railroad ("MNRR"), Brian G. Phillips ("Phillips"),

Kevin Pfeiffer (Pfeiffer"), and George D. Millett, Jr. ("Millett") (collectively, "Defendants"),

asserting claims of unlawful discrimination, retaliation, and hostile work environment in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., 42

U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec.

Law § 290e *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin.

Code § 8–101 *et seq.*

Before me is Defendants' motion for summary judgment on all of Turner's claims.  For

the reasons set forth below, Defendants' motion for summary judgment directed at Plaintiff's

federal and NYSHRL claims is GRANTED.  Because Turner's federal and state law claims have

been dismissed, I decline to exercise supplemental jurisdiction over Turner's claims brought

under the NYCHRL, and Defendants' motion for summary judgment is GRANTED without

prejudice to Plaintiff refiling in state court.

## I.   **Factual Background**[1]

Plaintiff Elgin K. Turner is a Black man who has worked for MNRR since 1990 as a

plumber in a unit within Grand Central Terminal ("GCT") known as the Pipe Shop.  (Def. 56.1

¶¶ 1–2).[2]  As a Pipe Shop plumber, Turner performed maintenance work in GCT restrooms.  (*Id.*

¶¶ 10–11.)

In 2011, Pfeiffer became Turner's supervisor.  (*Id.* ¶ 3.)  Turner has had a contentious

relationship with Pfeiffer and his other supervisors since at least 2011, at which time he began

complaining that he was exposed to asbestos and was generally "harassed and mistreated,"

"retaliated against," and subjected to a "hostile work environment."  (*Id.* ¶ 5.)  In 2012, Turner

---

[1] This section is drawn from the various submissions of both parties in order to provide background and context for Defendants' motion and is not intended as a recitation of all the material undisputed facts.  Other undisputed facts are discussed in subsequent sections as necessary.  Unless otherwise indicated, the facts set forth in this section are undisputed.

I note that Plaintiff purports to "dispute" many of the facts within Defendants' Local Rule 56.1 statement.  However, many of these disputes are not about the facts themselves, but rather the implication of those facts.  Additionally, Plaintiff uses his response to add in facts unrelated to those raised by Defendants.  Both of these actions are improper under Local Rule 56.1, and I disregard the improper assertions.  *See LG Cap. Funding, LLC v. PositiveID Corp.*, No. 17-CV-1297, 2019 WL 3437973, at *2 (E.D.N.Y. July 29, 2019) ("The Court can disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement." (internal quotation marks and alterations omitted)); *accord Crump v. Fluid Handling, LLC.*, No. 17-CV-45, 2019 WL 2145929, at *2 (W.D.N.Y. Mar. 29, 2019) ("Rather than scrutinize a Rule 56.1 statement line by line, a court may simply disregard any improper assertions or inadmissible evidence.").

[2] "Defs. 56.1" refers to Defendants' Statement of Facts Pursuant to Local Rule 56.1.  (Doc. 70.)

filed a workplace complaint against Pfeiffer for an altercation the two men had in connection with replacing a washing machine that Pipe Shop plumbers were allowed to use.  (*Id.* ¶ 6.) Turner's complaint alleged a violation of a prohibition on workplace violence, but not any racial discrimination.  (*Id.*)

In 2013, Millett became Turner's foreman.  (*Id.* ¶ 3.)  At all relevant times, Phillips was a manager in MNRR to whom Turner indirectly reported.  (Doc. 49 ¶ 11; *see also* Mustes Reply Decl. Ex. 12 at 2 (listing Philipps as the "Manager" of the "Plumbing" shift).)[3]

Since at least 2014, the significant majority of Pipe Shop workers, like Turner, have identified as Black.  (*See* Def. 56.1 ¶¶ 15–18 ("During the first quarter of 2014," of the "nine plumbers" who "worked out of the Pipe Shop," "six of them identif[ied] as black.").)

In mid-April 2014, the Pipe Shop began using a checklist known as the "Bathroom Sheet" to track issues in GCT restrooms and to assign restroom maintenance work to plumbers like Turner.  (*See id.* ¶¶ 36, 43.)  Other jobs carried out by Pipe Shop employees included "Service Plant" work, which related to GCT's heating system and often required welding skills and certifications.  (*See id.* ¶¶ 21–26.)  Pipe Shop employee assignments were made based on considerations including preference and capability—for example, one Black plumber preferred Bathroom Sheet work and was thus often selected to do restroom maintenance, (*id.* ¶ 20), and another Black plumber testified that "[i]f [he] could do bathrooms, [he] would do it every day" because "it's the easiest job ever," (Mustes Decl. Ex. 13 at 46:10–17).[4]  Of the four identified plumbers who regularly did Service Plant work, three were white, one was Black, and all had

_____

[3] "Mustes Reply Decl." refers to the Second Declaration of Jennifer A. Mustes in Support of Defendants' Motion for Summary Judgment, (Doc. 82), and the exhibits thereto.

[4] "Mustes Decl." refers to the Declaration of Jennifer A. Mustes in Support of Defendants' Motion for Summary Judgment, (Doc. 67), and the exhibits thereto.

welding experience.  (Def 56.1 ¶¶ 21–24.)

Turner did not like Bathroom Sheet work, because he found "[t]he Bathroom Sheet" to be "the most undesirable, degrading[,] and unpleasant assignment," (*see* Pl. 56.1 ¶ 99).[5]  Turner swears that he complained to Millett and asked why "only Black guys are assigned to the bathroom sheet," (Turner Decl. ¶ 35),[6] but Millett testified Turner never asked him that question, (Mustes Decl. Ex. 10 at 55:8–17).  Turner also swears that "only one Caucasian plumber was ever required to work the Bathroom Sheet assignment until after the EEOC charge that preceded this lawsuit," (Turner Decl. ¶ 26), but records of plumbers' work from 2015 through 2018 demonstrate that both white and non-white plumbers handled restroom maintenance work orders, (Mustes Reply Decl. Ex. 12).

Twice in April of 2014, Turner and another Black plumber in the Pipe Shop, Benny Gilliam ("Gilliam"), refused to perform Bathroom Sheet assignments, which led to Pfeiffer's filing disciplinary charges against both men.  (Def. 56.1 ¶¶ 43–45; *see also* Mustes Decl. Ex. 14 at 16:17–23 (Gilliam's deposition testimony stating that he thought Bathroom Sheet work was "[n]ot degrading, but it was definitely unpleasurable.").)  Turner was also subject to discipline on other occasions, including in June of 2014 when Pfeiffer saw him using a copy machine that Pfeiffer believed was not to be used by plumbers, (Def. 56.1 ¶¶ 47–50), and in March of 2016 when a supervisor of GCT electricians saw Turner "assuming the position of sleep" during a "department-wide safety meeting," (*id.* ¶¶ 52–58.)  Turner's most recent disciplinary charge came in the form of a formal reprimand in January 2020, which he received for eight absences

---

[5] "Pl. 56.1" refers to Plaintiff's Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 as Well as Plaintiff's Counterstatement of Undisputed Facts Pursuant to Local Rule 56.1.  (Doc. 78.)

[6] "Turner Decl." refers to Plaintiff Elgin Turner's Declaration in Opposition to Defendants' Motion for Summary Judgment.  (Doc. 76.)

from October 22, 2019 to December 11, 2019.  (*Id.* ¶ 60.)

On May 30, 2017, Turner filed intake paperwork with the Equal Employment

Opportunity Commission ("EEOC") in which he stated "Retaliation" as the basis for his claim.

(*Id.* ¶ 71.)  On June 27, 2017, the EEOC sent a notice of dismissal and a right-to-sue letter to

Turner and to MNRR's legal department.  (*Id.* ¶ 72.)  MNRR received its copy on July 3, 2017.

(*Id.*)

## II.   **Procedural History**

On November 21, 2017, Plaintiff commenced this action pro se by filing his original

complaint, along with a motion to proceed in forma pauperis.  (Docs. 1–2.)  Plaintiff filed an

amended complaint on March 2, 2018.  (Doc. 10.)  On June 18, 2018, Defendants, as well as

parties who were previously named as defendants, filed a motion to dismiss the amended

complaint.  (Doc. 26.)  On June 20, 2018, I directed Plaintiff to file a second amended complaint,

(Doc. 29,), which he filed on July 3, 2018, (Doc. 30).  On September 10, 2018, after receiving

extensions of time, Defendants moved to dismiss the second amended complaint.  (Doc. 35.)

On September 24, 2018, counsel for Plaintiff appeared in this action.  (Doc. 39.)  In light

of Plaintiff's having counsel, I granted Plaintiff leave to file his Third Amended Complaint.

(Doc. 46.)  On November 14, 2018, Plaintiff filed the Third Amended Complaint against the

current Defendants only.  (Doc. 48 ("TAC").)  Defendants answered on November 27, 2018.

(Doc. 49.)  Discovery was initially set to be completed by September 30, 2019, (Doc. 55), but

upon request, I extended this deadline until February 21, 2020, (Doc. 60).

On May 8, 2020, Defendants filed the instant motion for summary judgment along with

various supporting papers.  (Docs. 66–70.)  After receiving two extensions of time, (Docs. 72,

74), Plaintiff filed papers opposing Defendants' motion, (Docs. 75–78).  On July 16, 2020,

Defendants filed reply papers in support of the motion.  (Docs. 81–83.)

Plaintiff requested leave to file a sur-reply on July 22, 2020.  (Doc. 84.)  I denied this request, because I found that Plaintiff was "incorrect" in his assertion that "Defendants only 'barely mentioned' their procedural defenses in their memorandum in support of their motion for summary judgment and only substantively address[ed] them in their reply."  (Doc. 87.)

### III.   <u>Legal Standard</u>

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable

trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; . . ." Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In addition, courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in employment discrimination cases "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal quotation marks omitted).  Nevertheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

IV.    **Discussion**

Plaintiff brings claims under Title VII, § 1981, the NYSHRL, and the NYCHRL for workplace discrimination on the basis of race.  Plaintiff's claims are for disparate treatment, retaliation, and hostile work environment, and they touch on a variety of incidents that occurred in GCT from 2014 onward.  Defendants move for summary judgment on all of Plaintiff's claims, arguing that many are barred by relevant limitations periods, as well as that there are no disputed issues of fact sufficient for Plaintiff to proceed to a trial by a factfinder.  I will address the relevant arguments in turn.

A.  *Time Limitations on Title VII Claims Based on Right-to-Sue Letter*

1.  **Applicable Law**

To pursue an employment discrimination in federal court, "a litigant must [first] exhaust available administrative remedies in a timely fashion," *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996), by presenting "the claims forming the basis of such a suit in a complaint to the EEOC or the equivalent state agency," *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (internal quotation marks and alterations omitted).  Accordingly, courts may hear Title VII claims only if the claims have first been raised before the EEOC or if they are reasonably related to claims that were filed with the agency.  *See Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).  A claim is reasonably related to the filed claim "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Littlejohn*, 795 F.3d at 322 (internal quotation marks omitted).

Once a plaintiff receives a right-to-sue letter from the EEOC, he has 90 days to file suit. "[T]he 90–day limitations period set forth in 42 U.S.C. § 2000e–5(f)(1) begins to run on the date

that a right-to-sue letter is first received either by the claimant or by counsel, whichever is earlier." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (per curiam).  Because of this, a plaintiff must "file" a suit alleging Title VII claims before "the strictly enforced ninety-day limit ha[s] expired."  *Lewis v. NYC Dep't of Educ.*, No. 12-CV-675 (NRB), 2013 WL 5405534, at *5 (S.D.N.Y. Sept. 25, 2013); *accord Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) ("While the 90-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." (internal quotation marks omitted)).

### 2.  Application

Plaintiff filed this action on November 21, 2017.  (Doc. 1.)  On June 27, 2017, the EEOC sent a notice of dismissal and a right-to-sue letter to Turner and to MNRR's legal department. (Def. 56.1 ¶ 72.)  Defendants set forth evidence showing that Metro-North received a copy of the relevant EEOC right-to-sue letter on July 3, 2017.  (Larragoity Decl. ¶ 7 & Ex. B.)[7]  If Turner received this letter the same day, he would have had to file suit by no later than Monday, October 2, 2017, which is 90 days from July 3, 2017 and accounts for October 1, 2017's being a Sunday. *See* Fed. R. Civ. P. 6(a)(1)(C).  Thus, Defendants' position is that, based on the evidence in the record, the only conclusion is that Turner's Title VII claims were filed after the relevant 90-day period expired.  (*See* SJ Br. 18–19.)[8]  I agree.

"There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice . . . [and] received three days after its mailing." *Tiberio* 664 F.3d at 37.  This "presumption is not dispositive, however, if a claimant presents . . . admissible

---

[7] "Larragoity Decl." refers to the Declaration of Michelle Larragoity in Support of Defendants' Motion for Summary Judgment, (Doc. 68), and the exhibits thereto.

[8] "SJ Br." refers to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment.  (Doc. 69.)

evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to [be received]." *Id*. (alterations and quotation marks omitted).

Here, Turner's brief does not respond to Defendants' position that he failed to file suit within 90 days of receiving a right-to-sue letter, and his own Rule 56.1 Statement does not contain any evidence from which one can infer he did receive his copy of the right-to-sue letter so much later than MNRR received its copy that his Title VII claims could be timely. As noted, the EEOC sent a notice of dismissal and a right-to-sue letter to Turner and to MNRR's legal department on June 27, 2017. (Def. 56.1 ¶ 72.) MNRR received its copy on July 3, 2017. (*Id.*) Because Plaintiff has not presented any evidence that the letter was mailed later than June 27, 2017, or that it took longer than three days to be received, the Court presumes that Plaintiff received the right-to-sue letter by June 30, 2017, *see Tiberio*, 664 F.3d at 37, and therefore was required to file a lawsuit by September 28, 2017. Plaintiff did not commence this suit until November 21, 2017, almost two months beyond the ninety-day limitations period.

Accordingly, Defendants' motion to dismiss Turner's Title VII claims is GRANTED.

## B. *Discrimination Claims Under § 1981 and the NYSHRL*

### 1. Applicable Law

Discrimination claims under § 1981 and the NYSHRL are analyzed using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rosas v. Balter Sales Co. Inc.*, 12-CV-6557 (VSB), 2018 WL 3199253, at *3 (S.D.N.Y. June 29, 2018) ("It is well-established that discrimination claims brought under § 1981 are analyzed under . . . burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*."); *Ferraro v. Kellwood Co*, 440 F.3d 96, 99 (2d Cir. 2006) ("In

discrimination claims brought under the [NYSHRL], the burden-shifting framework established by the Supreme Court in [*McDonnell Douglas*] applies.").  Initially, the employee bears the burden of setting forth a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  "To set forth a prima facie case of discrimination, a plaintiff must show (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination."  *Saraf v. W. Publ'g Corp.*, No. 16-CV-1425, 2018 WL 7107266, at *3 (S.D.N.Y. Dec. 20, 2018).  The Second Circuit has emphasized that the "burden of establishing a *prima facie* case is *de minimis*."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (collecting cases).

Next, if a plaintiff successfully presents a prima facie case of discrimination, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for the adverse employment action.  *See id.* at 468–69.  The defendant's burden at this stage is "light."  *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998).  This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  To succeed at this stage, "the defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Texas Dep't of Cmty. Affs. V. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted).  "Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."  *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).  "Thus, the reasons tendered need not be well-advised,

but merely truthful." *Id.*

The burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer took the adverse employment action motivated "in whole or in part" by discrimination. *Holcomb*, 521 F.3d at 137 (internal quotation marks and emphasis omitted). However, in contrast to Title VII, which permits a mixed-motives analysis whereby a plaintiff can prevail if he shows that "the prohibited factor was at least one of the motivating factors" for the adverse action he faced, *id.* at 138 (internal quotation marks omitted), § 1981 requires the higher showing that the "defendant's discriminatory intent was a 'but-for' cause of the adverse employment action." *Farooqi v. N.Y. Dep't of Educ.*, 19-CV-3436, 2020 WL 1809290, at *2 (S.D.N.Y. Apr. 9, 2020) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (holding that under "§ 1981 . . . a plaintiff bears the burden of showing that race was a but-for cause of . . . injury.")). Although "[t]he Second Circuit has not yet conclusively resolved whether the but-for causation standard applies to claims under the NYSHRL . . . . [o]n several occasions, . . . the Circuit has implicitly applied the but-for standard to NYSHRL claims." *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 333 n.7 (S.D.N.Y. 2020) (internal citations omitted) (collecting cases.)

## 2. Application

Plaintiff's main theory of discrimination is that Defendants had a "racially disparate and discriminatory work assignment practice[]" in determining which plumbers did Bathroom Sheet work versus other job assignments, such as Service Plant work. (*See* SJ Opp. 14–15.)[9] Defendants argue that Turner could not have suffered an adverse employment action sufficient to

---

[9] "SJ Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. (Doc. 75.)

support a § 1981 discrimination claim because Turner's—with him having been assigned to

perform restroom maintenance—was "part of [Turner's] job description[]."  (SJ Br. 15 (citing

Mustes Decl. Ex. 67 (stating that Turner's job as a "Plumber/Pipefitter" included duties of

"maintain[ing] fixtures [sic] such as; toilets, sinks, urinals, etc.").)  Turner concedes that this job

description is correct and accurate.  (*See* Pl. 56.1 ¶ 78 (stating that his job was

"Pipefitter/plumber"); Barrett Decl. Ex. 11[10] (same "job description sheet" as that found in

Mustes Decl. Ex. 9).)  However, he avers that "only non-black or Caucasian [employees

similarly situated to him] have been regularly assigned to the Service Plant," which he also states

is the assignment most likely to pay overtime.  (Turner Decl. ¶ 122.)  Defendants counter by

citing evidence showing that both Black and non-Black plumbers did both Bathroom Sheet and

Service Plant work.  (*See* Doc. 83 ¶ 102 (citations omitted).)

The Second Circuit has held that "purportedly degrading work assignments" that are

"within [a plaintiff's] job description," and which cannot be characterized as more than "trivial

harms," cannot be deemed materially adverse."  *Rodas v. Town of Farmington*, 567 F. App'x 24,

27 (2d Cir. 2014) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d

Cir. 2014)).  It is true that a "subjectively undesirable" work assignment will not constitute an

adverse employment action so long as it is within a plaintiff's "job description."  *See Bowen-*

*Hooks v. City of New York*, 13 F. Supp. 3d 179, 214 (E.D.N.Y. 2014).  However, it is equally

well established that an employment action extends beyond a "mere inconvenience" and into the

realm of a materially adverse action where they have "obvious ramifications for his salary."  *See*

*Bonilla v. City of New York*, No. 18-CV-12142 (KPF), 2019 WL 6050757, at *13 (S.D.N.Y.

---

[10] "Barrett Decl." refers to the Declaration of Seamus Barrett, Esq. in Opposition to Defendants' Motion for
Summary Judgment, (Doc. 77), and the exhibits thereto.

Nov. 15, 2019).

I find that there is sufficient record material to find that Turner faced an adverse employment action through the Bathroom Sheet work assignment system. If it is true that the Bathroom Sheet system led to Turner's doing less work that would involve overtime hours, then the Bathroom Sheet system impacted Turner's pay. Although the record shows overtime was not guaranteed, (Def. 56.1 ¶ 25), the possibility of earning overtime was certainly within the parameters of Turner's contractual employment relationship with MNRR. As such, based on the record before me, a reasonable juror could find that Turner suffered an adverse action being assigned work under a policy that deprived him of certain "benefits . . . of the contractual relationship" he had with MNRR. *See* 42 U.S.C. § 1981(b).

With that said, and even assuming the record supports the other components of Turner's prima facie case, I find that Defendants have demonstrated "legitimate, nondiscriminatory reason[s]" for why Turner or other Black employees would have received Bathroom Sheet assignments over Service Plant assignments. *See Hicks*, 509 U.S. at 506–07. First, Defendants say, "the racial composition of the Pipe Shop makes it inevitable that" Black plumbers like Turner "will be assigned to perform restroom maintenance" more often than their non-Black colleagues, simply because there is more Bathroom Sheet work to go around and more Black plumbers than non-Black plumbers in the Pipe Shop. (*See* SJ Br. 16.) Indeed, around two-thirds of the plumbers in Turner's department were Black. (Mustes Decl. Ex. 2 at 44:15–45:3 (explaining that in 2014, of the "eight" plumbers in Turner's department, "six or seven are black."); *Id.* Ex. 12 at 5–6 (admitting that two of nine employees in Turner's department in 2014 were "Caucasian").) Second, the record shows that work assignments at GCT were based in part on employee preferences and capabilities. One Black plumber preferred Bathroom Sheet

14

assignments and often got them due to his preference, (Def. 56.1 ¶ 20), and another Black

plumber testified that "[i]f [he] could do bathrooms, [he] would do it every day" because "it's the

easiest job ever," (Mustes Decl. Ex. 13 at 46:10–17).  With regard to Turner's assertion that he

was deprived of overtime, Turner himself refused assignments that would have led to overtime

pay on multiple occasions because it would have meant working with colleagues whom he had

butted heads with in the past.  (Def. 56.1 ¶¶ 69–70 (citing Mustes Decl. Ex. 1 at 182–186

(Turner's deposition)).)[11]

In addition, Service Plant work often required special expertise, notably in the form of a

welding certification, and, as Defendant points out, some of Turner's coworkers were "qualified

welder[s]" and had taken "the welding test" and "passed it."  (Mustes Decl. Ex. 11 at 180:6–

181:16 (explaining that regular Service Plant jobs went to some of Turner's coworkers who were

"qualified welders" and had taken "the welding test" and "passed it.").)  There is no evidence in

the record that suggests that Turner had welding certifications or proficiency in welding.

This shifts the burden back to Turner to show pretext.  Turner argues that Defendants'

reasons are pretextual because "*all* plumbers" had the skills to do "either the Bathrooms Sheet or

the Service Plant as evidenced by the" relevant job description.  (SJ Opp. 38.)  However,

Turner's position is contradicted by the single piece of evidence he cites to support it:  the job

description states that skill with a welding torch "or Certificate of Fitness for Fire Watch <u>are

desirable but not required at hire</u>."  (Barrett Decl. Ex. 11.)  As noted above, Defendants identify

ample record evidence connecting welding proficiency with Service Plant assignments.  Turner

---

[11] In his deposition, Turner stated he refused overtime hours with certain coworkers "[b]ecause of racial discrimination, retaliation, and discrimination.  And I just feel the retaliation."  (Mustes Decl. Ex. 1 at 182:20–23.)  However, it is not clear what Turner means here by "racial discrimination" and "retaliation."  To the extent Turner's position is that the hostility he faced transformed his ability to do his work, I analyze those arguments *infra* in regard to Turner's hostile work environment claims.

simply does not make any arguments or cite any record evidence explaining how Defendants' consideration of employee skill is pretextual.

Turner's briefing is somewhat hard to follow, as it seems to conflate discrimination and retaliation theories of legal harm.  (*See* SJ Opp. 31 (stating immediately under the heading "Plaintiff Has Made Out a Prima Facie Case of Race Discrimination" the law on "[e]stablishing a prima face case of retaliation").)   To the extent Turner is trying to argue that the discipline and reprimands he received at work were because "[he] was singled out and targeted for retaliation," (*id.* at 33), this argument is misplaced.

First, as a matter of law, even a prima facie case of illegal discrimination requires a plaintiff to show "that he performed his duties satisfactorily" and yet "suffered an adverse employment action" anyway.  *Brown*, 673 F.3d at 150.  Here, Turner concedes that each instance of discipline he faced came after he did not do his job satisfactorily.  (*See* Pl. 56.1 ¶¶ 43–54 (conceding that Turner was disciplined for, among other things, "failing to follow" various "supervisory directive[s]," and for "assuming the position of sleep during a March 2, 2016 department-wide safety meeting").

Second, Turner does not identify any similarly-situated colleague who engaged in conduct like his and faced a materially different disciplinary consequence.  "When a plaintiff's misconduct is objectively more serious than that of a proposed comparator, differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment."  *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 464 (S.D.N.Y. 2006).  For example, during his deposition, Turner denied seeing employees sleep during safety stand down meetings.  (Muestes Decl., Ex. 1 at 146-47.)  However, in his declaration, Turner claimed that "[o]n numerous occasions" he saw other plumbers "sleeping and smoking . . . in the Pipe Shop,"

and during "department-wide safety meetings," (Turner Decl. ¶¶ 107-08).  As an initial matter, I do not credit Turner's declaration on this issue since it is directly contradicted by his prior deposition testimony.  *See United Magazine Co. v. Murdoch Magazines Distrib., Inc.*, 393 F. Supp. 2d 199, 212 (S.D.N.Y. 2005) ("It is axiomatic that a party cannot defeat summary judgment by submitting an affidavit that contradicts prior sworn deposition testimony.").  In any event, besides generally stating he observed other employees sleeping purportedly "in front of [] Phillips, Millett and/or Pfeiffer", (Turner Decl. ¶¶ 107-08), Turner does not identify with specificity which employees he claims were sleeping during department-wide safety meetings, nor does he state how he knows whether these other employees were actually observed by supervisors or whether these other employees faced any discipline.  In other words, Turner fails to identify any comparators.  In addition, Turner was disciplined for and admitted to assuming a position of sleep during a "department-wide safety meeting," (*see* Def. 56.1 ¶¶ 52–54), and when an employee nudged Turner to wake him up he lifted his head momentarily but then put his head back down and resumed a position of sleep, (Mustes Decl., Ex. 23).  Therefore, in addition to failing to identify comparators, Turner's behavior in continuing to sleep during the safety meeting, despite having been woken up, was—as a matter of fact—different in kind.  As such, this conduct is not comparable for the purposes of sustaining his discrimination claims.  *See, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) (plaintiff failed to "create a jury question on pretext" because she could not show comparable conduct by proposed comparators, where she "engaged in a physical fight, while the other employees' behavior—offensive though it may have been—involved words only"); *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (plaintiff was not similarly situated with co-employees in "all material respects" where it could not be shown that anyone else had a relationship of comparable type and

duration or had a "complaint regarding his conduct brought against him and then lied about the misconduct when confronted"); *Tomasino v. Mt. Sinai Med. Ctr. & Hosp.*, 97-CV-5252, 2003 WL 1193726, at *14 (S.D.N.Y. Mar.13, 2003) (granting summary judgment where plaintiff had medicated a patient without a doctor's order, and none of her proposed comparators' infractions were as serious).

Thus, Turner is unable to carry his burden of pointing to facts in the record that would permit a reasonable jury to find that Defendants discriminated against him because of his race. Accordingly, Defendants' motion to dismiss the disparate treatment claims under § 1981 and the NYSHRL is GRANTED and the claims are dismissed.

## C.   *Retaliation*

### 1.   **Applicable Law**

Retaliation claims under § 1981 and the NYSHRL "are also governed by the *McDonnell Douglas* burden-shifting framework." *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 69 (S.D.N.Y. 2016). A plaintiff may establish a prima facie case of retaliation by showing: "(1) that she participated in a protected activity [known to defendants], (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). The standard for an adverse employment action in the context of retaliation differs from the standard for a discrimination claim in that a plaintiff need only demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Among other ways, a plaintiff can

show the requisite causal connection if the adverse employment action he suffered occurred "not too long" after he participated in protected activity.  *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 & n.59 (2d Cir. 2020) ("five months is not too long to find the causal relationship" and collecting cases holding the same).  There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship."  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).  Rather, a court is "to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases."  *Id*. (internal quotation marks omitted) (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("comparing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's EEOC complaint, was in response to the plaintiff's protected activity)[,] *with Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45–46 (2d Cir. 1980) (finding that the lapse of eight months between an EEOC complaint and retaliatory act indicated a causal connection"))).

Once a plaintiff satisfies his burden, the burden then shifts to the defendant "to demonstrate that a legitimate, nondiscriminatory reason existed for its action."  *Summa*, 708 F.3d at 125.  If the defendant meets this burden, "then the burden shifts back to [the plaintiff] to establish, through either direct or circumstantial evidence, that the [employer's] action was, in fact, motivated by discriminatory retaliation."  *Id.* (internal quotation marks omitted).  Retaliation claims under § 1981 require a showing that the protected activity was a "but-for" cause of the adverse employment action.[12]  *See Comcast*, 140 S. Ct. at 1014.  The Second Circuit case law "implicitly applie[s] the but-for standard to NYSHRL claims."  *See Farmer*, 473 F.

---

[12] A plaintiff may establish a claim for retaliation without proving a valid discrimination claim.  *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Supp. 3d at 333 n.7 (S.D.N.Y. 2020) (collecting cases.)

## 2. Application

Turner claims that after he engaged in protected activity by complaining to Millett about racial disparities in the Bathroom Sheet assignments, he faced a number of "retaliatory disciplinary actions." (*See* TAC ¶¶ 27–29.)  In his declaration, Turner swears he complained to Millett in April of 2014 about why "only Black guys are assigned to the Bathroom Sheet." (Turner Decl. ¶¶ 33–36.)  This counts as "protected activity" since it is a "complaint[] of discrimination." *See Lore v. City of Syracuse*, 670 F.3d 127, 167 (2d Cir. 2012).

Defendants argue that the record does not support Turner's theory of retaliation in two key respects.  First, during the April and July 2014 instances of discipline that Turner faced, the MNRR employees involved in disciplining Turner were unaware of Turner's complaints to Millett.  (Def. 56.1 ¶¶ 31–33).  Turner raises no evidence disputing this critical fact, nor does he identify any other protected activity in which he engaged that those colleagues were aware of at the time.  As a result, the April and July 2014 discipline cannot satisfy a prima facie case for retaliation.

Second, Defendants argue the other instances of discipline Turner faced occurred almost two years or more after Turner complained to Millett.  (*See* Def. 56.1 ¶¶ 52–60 (collecting instances of disciplining spanning March of 2016 through December of 2019).)  Turner makes no argument whatsoever as to how the discipline he faced starting in March of 2016 could be causally related to his complaint to Millett in 2014, and he identifies no evidence demonstrating that he engaged in other protected activities closer in time to these instances of discipline.  The Second Circuit has found that "seven months is within the temporal range . . . sufficient to raise an inference of causation," at least where "other surrounding circumstances" could serve to

support the inference.  *See Summa*, 708 F.3d at 128–29.  However, there are no cases in this Circuit of which I am aware suggesting that temporal proximity of a year and eleven months is alone sufficient to satisfy an inference of causation.  Moreover, Turner does not point to any evidence in the record that otherwise tends to support an inference of causation between his workplace discipline and any protected activity.  Turner thus fails to meet his burden of showing evidence to make out a prima facie case of retaliation.

Accordingly, Defendants' motion to dismiss Turner's retaliation claims under § 1981 and the NYSHRL are GRANTED and the claims are dismissed.

### D.  *Hostile Work Environment*

#### 1.  Applicable Law

To establish the existence of a hostile work environment under Section 1981 or the NYSHRL, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (applying same standard under NYSHRL); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under . . . Section 1981. . . and the [NYSHRL] is essentially the same.").

To survive a motion for summary judgment, a plaintiff who alleges hostile work environment claims must identify sufficient record facts that would allow a jury "to conclude that the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse."  *Schiano*, 445

F.3d at 604 (footnote omitted).  The objective and subjective components include that "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).  A subjective perception that the work environment was hostile is necessary but not alone sufficient.  Accordingly, the "mere utterance of an epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment" so as to create an actionable hostile work environment claim.  *Harris*, 510 U.S. at 21 (internal citations, quotation marks, and alterations, omitted).  Moreover, a plaintiff must allege that the incidents were "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted); *see also Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) ("The plaintiff must show more than a few isolated incidents of racial enmity." (internal quotation marks and alterations omitted)).  "Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (internal quotation marks omitted).  However, "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

A plaintiff must also raise sufficient facts allowing a jury to reasonably conclude "that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (quoting *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003)).  As such, "an environment which is equally harsh for both [nonmembers and

members of a protected class] does not constitute a hostile working environment under the civil rights statutes." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999). The same requirement of causality applies to claims under Section 1981 and the NYSHRL. *See Bermudez*, 783 F. Supp. 2d at 578. "[I]t is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11-CV-3154 (AT), 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (alterations omitted).

A court must consider the totality of the circumstances in evaluating a hostile work environment claim, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "Facially neutral incidents may be included . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [the protected characteristic]. But this requires some circumstantial or other basis for inferring that [those facially-neutral] incidents . . . were in fact discriminatory." *Alfano*, 294 F.3d at 378.

Finally, a plaintiff pleading a hostile work environment at summary judgment must raise facts sufficient to allow "a specific basis for imputing the conduct creating the hostile work environment to the employer." *Britt v. Merrill Lynch & Co.*, No. 08-CV-5356 (GBD), 2011 WL 4000992, at *13 (S.D.N.Y. Aug. 26, 2011) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004). With respect to employer liability, common-law principles of agency control. *Perry v. Ethan Allen, Inc*., 115 F.3d 143, 152 (2d Cir. 1997). As such, "when a supervisor

wields the authority delegated to him by an employer . . . the supervisor's conduct is deemed to be that of the employer, and the employer is liable for that conduct." *Id*. at 152–53.  In contrast, "when the hostile environment is created by a coworker or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, the employer is liable only if it has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Id*. at 153 (internal quotation marks omitted).

An individual defendant may be held liable under § 1981 or the NYSHRL for a hostile work environment "only if that individual is personally involved in the alleged deprivation." *See Littlejohn*, 795 F.3d at 314 (internal quotation marks omitted) (affirming dismissal of § 1981 and § 1983 claims against a defendant where there was no factual basis for inferring that the defendant personally participated in the alleged offensive conduct); *see also Britt*, 2011 WL 4000992, at * 11 (applying this standard to NYSHRL and NYCHRL claims).

## 2.  Application

As an initial matter, a number of the allegations that informed Turner's pleadings of a hostile work environment have been shown, through discovery, to fall well below the level of "intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320.  For example, Turner alleged that a coworker "referred to Plaintiff as 'BOY,'" (TAC ¶ 40), which has obvious implications given that Turner is Black.  However, in his deposition, Turner clarified that this coworker started calling him "a 'backpack boy'" after observing Turner carrying "[his] backpack."  (Mustes Decl. Ex. 1 at 188:17–190:6.)  Turner's summary judgment papers do not address the discrepancy between the racially-loaded use of the term "boy" to refer to a Black man as opposed to the seemingly childish teasing or name-calling using a term like

"backpack boy," nor does he explain how the term "backpack boy" is emblematic of hostility that stems from the relevant "protected characteristic" of Turner's "race."  *See Lloyd*, 2013 WL 6667531, *11 (S.D.N.Y. Dec. 17, 2013) (citing *Brown*, 257 F.3d at 252).  This and other "[p]etty criticisms" Turner faced at work, such as that someone left "a black rubber snake . . . upon his belongings," (SJ Opp. 35), simply are not enough to allow a reasonable juror to infer racially motivated hostility "'amount[ing] to a change in the terms and conditions of employment.'"  *See Mack v. Port Auth. of N.Y. & N.J.*, 225 F. Supp. 2d 376, 388 (S.D.N.Y. 2002) (allegation that plaintiff was called "good boy" multiple times insufficient to sustain hostile work environment claim).  Turner's summary judgment papers offer no argument as to how these workplace slights, either individually or in the aggregate, could have both objectively and subjectively changed the conditions of his employment.

In addition, the record squarely contradicts the other arguments Turner makes in opposing summary judgment.  He argues that "a noose [was] hanged from the hook on his locker," (SJ. Opp. 35), but uncontradicted photographic evidence shows that the so-called "noose" is in fact a somewhat-unkempt coil of rope, roughly in a figure-eight shape with the excess tied off around the center.  (Mustes Decl. Ex. 32.)[13]

---

[13] A copy of this exhibit appears below in the text of this Opinion & Order.



Turner does not dispute the authenticity of the photograph of the rope or offer a competing

image.  "[T]he object in question here is, on the undisputed facts, not a noose," and thus cannot

support Turner's case.  *See, e.g.*, *Davis v. N.Y. Dep't of Corr.*, 256 F. Supp. 3d 343, 352

(S.D.N.Y. 2017) ("Although at this stage I must view the facts in the light most favorable to

Plaintiff, I am not required to 'credit assertions that are wholly contradicted by photographic

evidence in the record.'" (quoting *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012

WL 760317, at *7 (S.D.N.Y. Mar. 6, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013)); *Reeves v.*

*Anderson*, 11-CV-3770, 2014 WL 7336459, at *2 n.20 (S.D.N.Y. Dec. 24, 2014) ("Plaintiffs'

general characterizations of the photographs are disingenuous, at best, and are plainly

contradicted by the photographic evidence and testimony in the record.")[14]  Even if I accept that

Plaintiff subjectively believed the rope was fashioned in a noose—despite having not reported it

at the time—I find that a reasonable person would not objectively consider the rope shown in the

---

[14] The record also shows that "ropes" are "just strewn about all over" Turner's locker area at work because "the shop is messy" and "there's ropes everywhere."  (Mustes Decl. Ex. 13 at 60:24–61:23.)

photograph to resemble a noose.

Moreover, Turner's brief in opposition to summary judgment fails to point to anything in the record that supports a hostile work environment claim.  Indeed, the only evidence Turner does cite to oppose summary judgment on his hostile work environment claim does not even substantiate his argument.  Turner avers he was "subjected to harassment based on his race," including by being "directly called 'BOY,'" (*but see* Mustes Decl. Ex. 1 at 188:17–190:6), and in support of this he cites a single page of a single deposition transcript.  (SJ Opp. 35 (citation omitted).)  This page, from Millett's deposition, shows that Millett was asked "If you hear one plumber call one of your African-American plumbers boy . . . you're under no obligation to report it?"  (Barrett Decl. Ex. 3 at 121.)  Millett responded by saying "But I never heard it, so . . . how could I deal with it."  (*Id.*)  This does not support Turner's claim that he was called "boy" at any point in time.  Therefore, Turner has thus failed to carry his burden.

Accordingly, Defendants' motion for summary judgment on Plaintiff's hostile work environment claims under § 1981 and the NYSHRL is GRANTED and those claims are dismissed.

## E.  *NYCHRL Claims*

Turner's remaining claims all arise under the NYCHRL.  Having dismissed all of Plaintiff's federal claims, as well as his NYSHRL claims that are governed under the same standards as their federal counterparts, my jurisdiction over Plaintiff's remaining claims would be supplemental.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are

dismissed before trial . . . the state claims should be dismissed as well."); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's state law claims, including NYCHRL claims, after dismissing all federal claims.  *See, e.g.*, *Espinoza v. N.Y.C. Dep't of Transportation*, 304 F. Supp. 3d 374, 391 (S.D.N.Y. 2018) (granting summary judgment dismissing plaintiff's federal claims and declining to exercise supplemental jurisdiction over NYCHRL claims), *appeal dismissed* (Oct. 4, 2018); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-0454 (RA), 2014 WL 941821, at *1–2 (S.D.N.Y. Mar. 11, 2014) (declining to exercise jurisdiction over NYHSRL and NYCHRL claims); *Algarin v. City of New York*, No. 12-CV-1264 (LTS), 2012 WL 4814988, at *4 (S.D.N.Y. Oct. 10, 2012) (declining to exercise jurisdiction over New York State Executive Law § 296 and NYCHRL claims); *Velasquez v. City of New York*, No. 08-CV-08478 (RJH), 2012 WL 232432, at *8 (S.D.N.Y. Jan. 25, 2012) (declining to exercise supplemental jurisdiction over tort claims after granting summary judgment dismissing § 1983 claims); *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 402 (S.D.N.Y. 2011) (declining to exercise jurisdiction over NYSHRL and NYCHRL claims).  Furthermore, "comity counsels against exercising jurisdiction over a plaintiff's NYCHRL claims, as the NYCHRL has a lower threshold of proof than its federal counterparts and has been applied primarily at the intermediate appellate level of the state courts, with limited opportunity for the New York Court of Appeals to construe it."  *Smith v. City of N.Y.*, 385 F. Supp. 3d 323, 345 (S.D.N.Y. 2019) (internal quotation marks omitted); *cf. Valencia*

*ex rel. Franco v. Lee*, 316 F.3d 299, 300–01 (2d Cir. 2003) (finding that district court had abused its discretion by exercising supplemental jurisdiction over state law claim that "raise[d] complex and unsettled questions of New York law" where federal claims had been abandoned).

I have dismissed all claims over which I had original jurisdiction, as well as the state law claims governed by the same standards as their federal counterparts. Accordingly, I decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. These claims are DISMISSED without prejudice to Plaintiff refiling in state court.

## V.    <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Title VII, § 1981, and NYSHRL claims are dismissed with prejudice. Plaintiff's NYCHRL claims are dismissed without prejudice to refiling in state court.

Plaintiff is advised that the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(d), "stops the clock" on the statute of limitations for any state law claims filed in federal court while the claim is pending in federal court and for 30 days after it is dismissed. *Artis v. District of Columbia.*, 138 S. Ct. 594 (2018).

The Clerk of Court is respectfully directed to terminate the open motion at Doc. 66, enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:  March 19, 2024
      New York, New York

Vernon S. Broderick
United States District Judge